John P. Forest, II, VSB# 33089
ALLRED BACON HALFHILL & YOUNG, P.C.
11350 Random Hills Rd., Suite 700
Fairfax, VA 22030
(703) 352-1300
*Counsel for the Debtor*

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| IN RE SHAWERMA EXPRESS ) | |
| ) | Docket Number 16-10936-RGM |
| Debtor-in-Possession ) | Chapter 11 |
| ) | |

## DISCLOSURE STATEMENT

**I.   INTRODUCTION**

This is the disclosure statement (the "Disclosure Statement") for the Chapter 11 case of Shawerma Express, Inc. (the "Debtor").  This Disclosure Statement contains information about the Debtor and describes the Plan of Reorganization (the "Plan") filed by the Debtor with this Disclosure Statement.  A copy of the Plan accompanies this Disclosure Statement.  **Your rights may be affected.  You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one**.  The proposed distributions under the Plan are discussed in this Disclosure Statement.

**No representation concerning the Debtor, its business operations, its property, or the value of its property is authorized except as set forth in this Disclosure Statement.  No person should rely upon any representation made by or on behalf of the Debtor other than as contained in this Disclosure Statement.  The debtor has attempted to assemble accurate information for this Disclosure Statement; nevertheless, the information contained has not been subjected to a certified audit.  The amount of the claims scheduled by the Debtor reflects the information available to the Debtor as of the date the Debtor's Schedules were filed.  However, the Debtor did not then and does not now have information pertaining to**

**the receipts and disbursements made for the Debtor from January 2016 through March 29, 2016.  Therefore, the amounts scheduled by the Debtor may not be complete and may not distinguish between claims which accrued post-petition but before Dawoud Murad was able to obtain control of the operations of the Debtor [*i.e.*, March 15, 2016 through March 28, 2016].  Accordingly, on April 20, 2016, the Debtor issued its notice to creditors informing them of their obligation to file a proof of claim**.

If you want additional information about the Plan, contact counsel for the Debtor.

A.    <u>Nature of Disclosure Statement</u>.  This Disclosure Statement describes: the Debtor and significant events during the bankruptcy case; how the Plan proposes to treat claims or equity interests (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed); who can vote on or object to the Plan; what factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan; why the Debtor believes the Plan is feasible, and how treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and the effect of confirmation of the Plan.  Be sure to read the Plan as well as the Disclosure Statement.  This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.  The Court has not yet confirmed the Plan described in this Disclosure Statement.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

B.    <u>Hearing on Disclosure Statement</u>. The hearing where the Court will determine whether to approve this Disclosure Statement will take place on **July 26, 2016 at 11:00 a.m.**, in the Courtroom of Judge Kenney, at the U.S. Bankruptcy Court 200 S. Washington St., Alexandria, VA 22314.  If you are entitled to vote to accept or reject the plan [addressed in Article IV], you will receive a ballot and you must return it to: Shawerma Express, Inc., c/o John P. Forest, II, Allred Bacon Halfhill & Young, P.C., 11350 Random Hills Rd., Suite 700, Fairfax, VA 22030 so that it is received as may be directed by the Court.  Any objections to this Disclosure Statement must be made in accord with the Notice of Hearing which accompanies this

Disclosure Statement.

C. <u>Conditional Approval</u>. The Court has not conditionally approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms. The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted. If there is a conditional approval of this Disclosure Statement, creditors retain the right to object to the Disclosure Statement at the hearing on confirmation of the Plan.

D. <u>Bar Date</u>: Pursuant to Local Bankruptcy Rule 3003-1(B), and the Notice of Claims Bar Date [*See* Docket Entry No. 68] the date by which all creditors must file a proof of claim is July 19, 2016.

## II. BACKGROUND

A. <u>Description and History of the Debtor's Business.</u> The Debtor is corporation owned by Dawoud Murad and Johni Kattan (collectively, the "Shareholders"). The Debtor operates a food service business in Fairfax, Virginia pursuant to a lease.

B. <u>Insiders/Affiliates of the Debtor.</u> Each Shareholder received compensation from the Debtor within two years of the Debtor's Petition for Relief. Christina Murad, the wife of Mr. Murad, has provided and continues to provide bookkeeping services for the Debtor.

C. <u>Management of the Debtor Before the Bankruptcy</u>. From the inception of the Debtor's operations through January 2016, the debtor's affairs were managed by Mr. Murad. From January 2016 through the petition date, the debtor's affairs were managed by Mr. Kattan.

D. <u>Management of the Debtor During the Bankruptcy</u>. From the petition date, through March 28, 2016, the affairs of the Debtor were managed by Mr. Kattan. On March 29, 2016, Mr. Murad assumed the management of the affairs of the Debtor and will continue to do so through the pendency of these proceedings.

Mr. Murad has been actively involved in the food service industry for the past 10 years

and has managed and operated food service businesses since 2010.

        D.       <u>Events Leading to Chapter 11 Filing.</u>  Filing of the petition for relief was the result of Mr. Kattan having wrongfully attempted to exercise control over the affairs of the Debtor. During the time Mr. Kattan attempted to operate the affairs of the Debtor, Mr. Kattan abruptly closed the Debtor's business; but when Mr. Kattan re-open the business, he did not make rent payments to the Debtor's landlord, did not make regular payments to the Debtor's employees, did not make any payments for the Debtor trust fund creditors [the Internal Revenue Service and the Virginia Department of Taxation], either cancelled or otherwise refused to make payments for any insurance premiums of the Debtor [to include hazard insurance and workman's compensation], removed the POS terminal from the Debtor's offices and conducted cash sales.

        E.       <u>Significant Events During the Bankruptcy Case.</u>  During the pendency of these proceedings, Mr. Kattan obtained an *ex parte* protective order against Mr. Murad from the Fairfax County General District Court.  On March 29, 2016 [the day following the initial contempt proceedings] Mr. Kattan withdrew his application for the protective order.

On March 17, 2016 and March 30, 2016, the Debtor filed applications for a rule to show cause to allow Mr. Murad to operate the Debtor's business affairs and to obtain possession of the proceeds of bank accounts into which Mr. Kattan had deposited the proceeds [both pre- and post-petition ] of the Debtor's business affairs.

The Debtor has filed a series of motions for examinations of Mr. Kattan and certain financial institutions in which Mr. Kattan may have deposited proceeds of the operations of the Debtor's affairs.

The Debtor has filed a motion to assume the operating lease for its premises.  *See* Docket Entry No. 70.

Otherwise, there have been no hearings which substantively and materially impact the Debtor or the Estate.  There have been no asset sales outside the ordinary course of business, no debtor in possession financing, and no cash collateral orders.  No adversary proceedings have

been filed, nor has there been other significant litigation (including contested claim disallowance proceedings), or other significant legal or administrative proceedings that are pending or have been pending during the case in a forum other than the Court.

      F.      <u>Projected Recovery of Avoidable Transfers</u>.  As of the date of this Disclosure Statement, the Debtor does not have sufficient information to determine whether there may have been any avoidable transfers by the Debtor when the affairs of the Debtor were managed by Mr. Kattan.  The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.   However, if there were any avoidable transfers, the recoverable proceeds will not be necessary for the Debtor to consummate its proposed Plan.  Notwithstanding the foregoing, if you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtor may seek to avoid such transfer.

      G.      <u>Claims Objections</u>.  Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims.  Even if a claim is allowed for voting purposes, you may not be entitled to a distribution if an objection is thereafter sustained.  The procedures for resolving disputed claims are set forth in the Plan.

      H.      <u>Current and Historical Financial Conditions.</u>  The Debtor's financial distress was caused by the conduct described in Section II.B., above.  In the absence of interference by Mr. Kattan, the Debtor anticipates that it will be able to consummated the contemporaneous Plan.

      I.      <u>Unsecured Creditors Committee</u>.  No committee of unsecured creditors has been formed or requested to be formed.

**III.    SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

The Plan places claims and equity interests in various classes and describes the treatment of each.  The Plan states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited as set forth in the Plan.

Certain types of claims are automatically entitled to specific treatment under the Code.

They are not considered impaired, and holders of such claims do not vote on the Plan. They may object if, in their view, their treatment under the Plan does not comply with that required by the Code. However, no unclassified claims are known to exist.

    A.    <u>Administrative Expenses</u>. Administrative expenses are costs or expenses of administering the Chapter 11 case which are allowed under § 507(a)(2) of the Code.[1] All administrative expenses be paid on the effective date of the Plan, unless a claimant agrees to a different treatment. The estimated administrative expenses and their proposed treatment under the Plan are:

| Type/Payee | Estimated Amount | Treatment |
| --- | --- | --- |
| Professional Fees/ Debtor's Counsel and CPA | $10,000 | To be paid, in cash, upon confirmation |
| Quarterly Fees/ Office of the U.S. Trustee | $325/Quarter | To be paid, in cash, upon confirmation |

    B.    <u>Priority Tax Claims.</u> Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code.[2] Unless the holder of such a § 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five (5) years from the order of relief. The following are the Debtor's estimated § 507(a)(8) priority tax claims and their proposed treatment under the Plan:

| Type/Payee | Estimated Amount | Treatment |
| --- | --- | --- |
| BPOL Taxes/Fairfax County | As scheduled | Pro-rata monthly payment equal to amount that this claim represents as to the total pre-petition claims in this class, with interest as permitted by applicable law |
| Sales and Use Taxes/ Commonwealth of Virginia | As scheduled | *See* above. |

---

    [1] These Administrative Expenses shall be identified as Class 1 claims.

    [2] These priority unsecured claims shall be identified as Class 2 claims.

| Taxes/Virginia Employment Commission | As scheduled | *See* above. |
| Wages/Debtor's Employees | As scheduled | *See* above. |
| Trust fund payments/ Internal Revenue Service | As scheduled | *See* above. |

    C.    <u>Classes of Other Claims and Equity Interests.</u>  The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

    1.    <u>Classes of Secured Claims.</u>  There are no identified secured claims.

    2.    <u>Rent Arrearage.</u>  As of the petition date, the Debtor was in arrears of three months rent with its landlord.  As of the date of this Disclosure Statement, this claim is estimated at as set forth in the Debtor's Motion to Assume Lease [Docket Entry No. 70].[3]  This Claim shall be treated in accord with any order the Court may enter in resolving the Debtor's Motion to Assume Lease.

    3.    <u>Classes of General Unsecured Claims.</u>  General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.  The Debtor has identified two classes of general unsecured claims.

    a.    <u>Unsecured Creditors.</u>  This class of claims is comprised of pre-petition vendors and pre-petition service providers as identified in Schedule F.[4]  Any such allowed Class 4 claims shall be paid, pro-rata, in cash with interest as allowed by law after any allowed Class 1, 2, and 3 claims are paid.

    b.    <u>Insider General Unsecured Creditors.</u>  This class of Claims is comprised of Claims held by insiders [Johni Kattan, Dawoud Murad, and Christine Murad] with respect to any of their claims, including but not limited to loans to the Debtor.[5]  Any such allowed

---

[3] This claim shall be identified as a Class 3 claim.

[4] These claims shall be identified as Class 4 claims.

[5] These claims shall be identified as Class 5 claims.

Class 5 claims shall be paid, pro-rata, in cash with interest as allowed by law after any allowed Class 1, 2, 3, and 4 claims are paid.

          c.    <u>Equity Interest Holders</u>.  Equity interest holders are the Shareholders.[6]  These equity interests will be retained.  The holders of these Claims will not receive any dividend or distribution under the Plan.

    D.    <u>Discussion of Impairment</u>.  The Class 1, 2, 3, 4, and 5 Claims are unimpaired.  The Class 6 Claims are impaired.

    E.    <u>Means of Implementing the Plan</u>

        1.    <u>Source of Payments; Establishment of Plan Fund</u>.  Payments/distributions under the Plan will be funded by the sales receipts of the Debtor.  Based upon historical sales and expenses, the Debtor anticipates that $1,000 will be available each month to fund the Plan.

        2.    <u>Post-confirmation Management.</u>  Post-Confirmation management of the Debtor will be conducted by Mr. Murad.

    F.    <u>Risk Factors.</u>  The only identifiable risk factor under the proposed Plan are the general market and economic conditions in which the Debtor operates, but also subject to further efforts by Mr. Kattan to interfere with the Debtor's operations.

    G.    <u>Executory Contracts and Unexpired Leases.</u>  The Plan is contingent upon the Debtor's assumption of its operating lease.  The Debtor has no knowledge of any other executory contracts at this time.  The Debtor reserves however, the right to reject contracts, pursuant to law, and to amend its Plan to provide for such rejection if required.  **The deadline for filing a proof of claim based on a claim arising from the rejection of a lease or contract is not less than 5 days prior to the date first set by the Bankruptcy Court for hearing on the confirmation of the Plan.**  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

    H.    <u>Tax Consequences of Plan.</u>  The Debtor does not believe that there are any tax

---

[6] These claims shall be identified as Class 6 claims.

consequences in the event of approval and consummation of the Plan. There are no taxable events which will occur in the event of either approval and consummation of the Plan. All local taxes, such as real estate taxes, shall be paid as operating expenses of the Debtor. Any creditors who have a concern with how the Plan may impact their tax liabilities or obligations should consult with their own accountant, attorney, or tax advisor.

IV.     **CONFIRMATION REQUIREMENTS AND PROCEDURES**

   A.     <u>General</u>.  To be confirmable, the Plan must meet the requirements listed in § 1129 of the Code. These include the requirements that the Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are not the only requirements for confirmation. Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

   A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

   The Debtor believes that classes 2 through 5 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or

equity interest for voting purposes pursuant to Fed. R. Bankr. P 3018(a).  **The deadline for filing a non-governmental proof of claim is July 19, 2016.  The deadline for filing a non-governmental proof of claim is August 19, 2016.**

The holder of an allowed claim or equity interest has the right to vote only if it is in a class that is impaired under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

The holders of the following types of claims and equity interests are not entitled to vote: holders of claims and equity interests that have been disallowed by an order of the Court; holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes; holders of claims or equity interests in unimpaired classes; holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; holders of claims or equity interests in classes that do not receive or retain any value under the Plan; and administrative expenses.  **Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

B. <u>Ballots/Voting</u>.  Upon approval of this Disclosure Statement, the Court may enter an order setting a hearing date for confirmation of the Plan.  Upon entry of such order, a copy will be mailed to all parties in interest, together with a notice of the confirmation hearing, ballot to be used to accept or reject the Plan will be mailed, together with a copy of this Disclosure Statement, a copy of the Plan, and other appropriate papers.

C. <u>Votes to Confirm Plan</u>. If an impaired class of creditors exists, the Court cannot confirm the Plan unless at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and all impaired classes have voted to accept

the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed below.

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (½) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated as prescribed by § 1129(b) of the Code. A plan that binds non-accepting classes is referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly", and is "fair and equitable" toward each impaired class that has not voted to accept the Plan. You should consult your own attorney if a confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.

D.    <u>Liquidation Analysis</u>.  To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as they would receive in a Chapter 7 liquidation. Under a Chapter 7 liquidation, there will be no assets available to the Debtor to apply to any unsecured claims. Therefore, no further liquidation analysis is provided.

E.    <u>Feasibility</u>.  The Court must find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further reorganization of the Debtor or any successor, unless such liquidation or reorganization is proposed in the Plan. The Debtor believes that it will cash on hand on the Effective Date to pay the claims and expenses required to be paid on that date. The Debtor must also show that it will have enough cash over the life of the Plan to make

the required Plan payments.

## V.     EFFECT OF CONFIRMATION OF PLAN

A.     <u>Discharge of Debtor.</u>  Confirmation of the Plan does not discharge any debt provided for in the Plan until the court grants a discharge on completion of all payments under the Plan, or as otherwise provided in § 1141(d)(5) of the Code.

B.     <u>Modification of Plan.</u>  The Plan Proponent may modify the Plan at any time before confirmation of the Plan.  However, the Court may require a new disclosure statement and/or re-voting on the Plan. Upon request of the Debtor, the U.S. Trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before the completion of payments under the Plan, to increase or reduce the amount of payments under the Plan on claims of a particular class, extend or reduce the time period for such payments, or alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of the claim made other than under the Plan.

C.     <u>Final Decree.</u>  Once the estate has been fully administered, as provided in Fed. R. Bankr. P. Rule 3022, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case; or the Court may enter such a final decree on its own motion.

Respectfully submitted by:

*/s/ John P. Forest, II*
John P. Forest, II, VSB# 33089
Allred Bacon Halfhill & Young, P.C.
11350 Random Hills Road, Suite 700
Fairfax, Virginia 22030
Telephone: (703) 352-1300
Facsimile: (703) 352-1301
Email: jforest@abhylaw.com
*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2016, that a true copy of the foregoing DISCLOSURE STATEMENT was served either by ECF transmission or first class mail, postage prepaid, upon: (1) the Office of the U.S. Trustee, 115 S. Union St., 2nd Fl., Alexandria, VA 22314; (2) all registered ECF users; and (3) all other creditors at their address on the attached Mailing Matrix [Exhibit 1].

/s/ John P. Forest, II
John P. Forest, II